UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2013 DEC 13 P 3: 51

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| JOSEPH WATLEY AND | : |
| KARIN HASEMANN | : |
| Plaintiffs | : |
| v. | : |
| JUDGE CHRISTINE E. KELLER, | : |
| THE CONNECTICUT JUDICIAL | : |
| BRANCH | : |
| JOETTE KATZ, COMMISSIONER OF | :   **JURY TRIAL DEMANDED**, |
| THE DEPARTMENT OF | : |
| CHILDREN AND FAMILIES (DCF), | : |
| THE DEPARTMENT OF CHILDREN | : |
| AND FAMILIES | : |
| Defendants | : |

## COMPLAINT

Plaintiffs, Joseph Watley and Karin Hasemann, hereby complain against

Defendants the Honorable Christine E. Keller, The Connecticut Judicial Branch,

Attorney Joette Katz, Commissioner of the Department of Children and Families (DCF),

and The Department of Children and Families (DCF) as follows :

### Introduction

The Plaintiffs, Joseph Watley and Karin Hasemann, bring this action to obtain

redress for the Defendants' violations of Title II of the Americans with Disabilities act of

1

1990 and as Amended in 2008, 42 U.S.C. Sections 12131-12134, Section 504 of the

Rehabilitation Act of 1973, and the Due Process Clause of the fourteen Amendment to

the United States Constitution.

## Parties

1.  Plaintiff, Joseph Watley, is a resident of Thomaston, Connecticut, a part of

Litchfield County, who has been regarded as having a mental health disability he does

not have.

*JW 12/13/13*

*town It 12/13/13*

2.  Plaintiff, Karin Hasemann is a resident of Waterbury, Connecticut, a part of

New Haven County, who has a physical disability of mild narcolepsy and who has been

regarded as having a mental health disability she does not have.

3.  Defendant, the Honorable Judge Christine E. Keller, in her individual and

official capacity as a Judge of the Superior Court, although she is now an Appellate

Court Judge located at the Appellate court, 231 Capitol Avenue, Hartford, CT  06106.

4.  Defendant, the Connecticut Judicial Branch is the branch of government here

in Connecticut responsible for the administration of justice.  Its administrative offices are

located at 231 Capitol Avenue, Hartford, CT 06106.

5.  Defendant, Attorney Joette Katz, in her official capacity as Commissioner of

the Department of Children and Families located at 505 Hudson Street, Hartford, CT

06106.

6.  Defendant, The Department of Children and Families is a State Agency of

Connecticut which is mandated to protect children, improve child and family wellbeing,

and support and preserve families.  It is located at 505 Hudson Street, Hartford, CT

06106.

## Jurisdiction and Venue

7.  This court has jurisdiction over these claims because they are civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. Section 1331 and 42 U.S.C. Sec. 1983.

8.  This Court has jurisdiction under 28 U.S.C. Sec. 1343 (3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government.

9.  Venue is appropriate in this judicial district under 28 U.S.C. Sec. 1391(b) because the events that gave rise to this Complaint occurred in this district.

10.  The Court has additional jurisdiction over the claims in regard to Intentional and Negligent Infliction of Emotional Distress under Connecticut law, as these claims arise under the same case or controversy, as required by 28 U.S.C. Sec. 1367.

## Facts

11.  The Plaintiffs, Joseph Watley and Karin Hasemann are the parents of Joseph W. born July 18, 2005, and Daniel W. born July 20, 2006.

12.  On July 21, 2005, the Commissioner of the Department of Children and Families (DCF), filed a petition alleging that the minor child, Joseph W., was neglected based upon the doctrine of predictive neglect.

13.  On July 24, 2006, a second petition was filed alleging that the minor child, Daniel W., was neglected again based upon the doctrine of predictive neglect.

14.  DCF requested an Order of Temporary Custody (OTC) from Connecticut Superior Court for both of these children which were granted respectively on August 5, 2005 and August 11, 2006.

15.  On December 10, 2007, DCF filed termination of parental rights petitions as to both children, alleging failure to rehabilitate pursuant to C.G.S. §17a-112(j)(3)(B)(ii) as grounds for termination of the parental rights of both parents.

16.  In addition, the Department of Children and Families alleged the ground of failure to rehabilitate pursuant to C.G.S. §17a-112(j)(3)(E) as to mother.

17.  The basis for the Defendants' actions was their allegation that both mother and father have a mental illness, however, the plaintif's challenge that diagnosis and state that they have been falsely perceived as having mental illness when this is not the case.

18.  Even though at the beginning of the case Defendants stated they believed that the Plaintiffs had mental health disabilities, they failed to provide reasonable modifications to the Plaintiffs that, were it true they had disabilities, would have been necessary  in order to allow them to have access to the activities, services, and programs provided by the Defendants.  This is in violation of Title II of the ADA.

19.  Plaintiffs further state that at that time and on an ongoing basis the Defendants failed to provide them with adequate notice and information regarding the nondiscrimination requirements of the ADA and Sec. 504 of the Rehabilitation Act, failed to provide them with the name and contact information of the Designated Responsible Employee for the Defendants, and failed to provide information on grievance procedures which would have allowed the plaintiffs to file grievances and obtain

4

appropriate relief when and if their rights under the ADA and the Rehabilitation act were violated.

20.  In order to retain custody of their children, DCF told Plaintiffs that they must "rehabilitate" or, in other words, eliminate their alleged disability.  Persons with physical disabilities are not told that they must eliminate their disabilities in order to retain their right to parent.  However, plaintiffs state that they do not have mental health disabilities and should not be required to rehabilitate from a condition they do not have.

21.  On October 1, 2008, the court, *Olear, J.,* terminated the parents parental rights to both children based on §17a-112(j)(3)(B)(i) for both mother and father and §17a-112(j)(3)(E) for mother. Both parents appealed this decision.

22.  Four years later, On June 28, 2011, the Supreme Court affirmed the Appellate Court's decision to reverse the trial court's judgment terminating Joseph Watley and Karin Hasemann's parental rights. See *In re Joseph W.,* supra, 301 Conn. 245.

23.  The case was reversed and remanded for a new trial on both the neglect and termination petitions.

24.  The court concluded that the prior neglect adjudications had to be opened because the trial court, having found that the father did not stand silent at the neglect hearing or waive his right to enter a plea, should have unconditionally granted the father's motion to open the adjudications of neglect and allowed father to contest those adjudications and consequent dispositions, regardless of whether he was a custodial parent.

25.  Because the trial court, *Olear, J.,* had expressly relied on the prior 2007 neglect adjudications in rendering its termination judgments, and because those neglect adjudications had to be opened, the Supreme Court determined that there was no longer any basis for upholding the trial court's termination of parental rights judgments, since they had been premised on the existence of the now invalidated prior neglect adjudications. Id., 266.

26.  On October 28th, 2011 the court , *Bentivegna, J.,* issued a decision adjudicating the children neglected and committing them to the care and custody of DCF. Judge Bentivegna also approved permanency plans for termination of parental rights and adoption and denied both parents' motions to resume visitation. The respondents filed appeals only from the trial court's adjudications of neglect and dispositions of commitment. They did not appeal the denial of their motions for visitation.

. 27.  On April 17, 2012, the court, *Bentivegna, J.,* after a contested trial, terminated the mother's and father's parental rights. Mother and father appealed this decision.

28.  On June 28, 2012, the Supreme Court reversed Judge Bentivegna's October 28, 2011 decision regarding the neglect adjudications and commitments of the children. See *In re Joseph* W., supra, 305 Conn. 633.

29.  On June 29, 2012, father filed a motion to vacate the orders of temporary custody, to which the petitioner filed an objection on August 21, 2012.

30.  On July 6, 2012, mother filed a motion for visitation, to which DCF filed an objection on August 21, 2012.

31.  On August 3, 2012, the court, *Upson, J.,* granted mother's motion to vacate Judge Bentivegna's judgments of April 17, 2012 terminating mother's parental rights. Two days later, on August 3, 2012, Judge Upson granted a similar motion filed by the father and vacated the judgments terminating father's parental rights.

32.  On August 3, 2012, father filed a motion for visitation, to which DCF filed an objection on August 21, 2012.

33.  On August 3, 2012, both parents filed a motion to bifurcate the two children's matters, to which DCF filed an objection on August 21, 2012.

34.  On August 3, 2012, both parents filed motions to have the cases transferred to a different department of children and families regional office, to which DCF objected on August 21, 2012.  The motion was denied on September 14, 2012.

35.  On August 21, 2012, DCF filed a motion to amend the neglect and termination of parental rights petitions, which included substantive amendments to the summaries of facts contained in those petitions.

36.  On the first day of trial, December 3, 2012, the court denied the parents' written requests, filed and dated December 3, 2012, to require that American with Disabilities Act (ADA) coordinators for the department and the judicial branch be present throughout the trial, and then failed to do anything further.  Plaintiffs state this lack of action was improper.

37.  Plaintiffs state that if this particular reasonable modification was not available, or was not required under the ADA as the CT Judicial Branch claims, it was insufficient under Title II of the ADA to simply deny the request.  The Connecticut Judicial Branch was then required to specify what other alternative reasonable

modifications were available for the Plaintiffs since the CT Judicial Branch itself had

defined them as having a mental health disability.  Further, the CT Judicial Branch

needed to take credible steps in order to prevent discrimination against the plaintiffs

based upon disability.

37.  The parents stated that the removal of their children from custody constituted

discrimination against them on the basis of their perceived disabilities, and that their

lawyers were ineffective in positing their ADA defenses.

38.  In her Memorandum of Decision dated March 11, 2012 Judge Keller stated

that "Neither parent made an offer of proof as to a claimed disability under the ADA

definitions, or raised any issue as to his or her competency to stand trial."

39.  Such a stand is disingenuous given that the Plaintiffs were denied custody of

their children on the basis of the doctrine of predictive neglect specifically because

Defendants stated that each has a mental health disability.  Further, the plaintiffs

specifically requested protections under Prong III of the ADA, the "regarded as"

category.

40. Judge Christine E. Keller further stated in her Memorandum of Decision

dated March 11, 2012 that Plaintiffs were not eligible under Title II of the ADA because

"There was no request for the appointment of a guardian ad litem."  There is no

requirement that a person with a disability be declared incompetent in order to obtain

their rights to reasonable modifications under Prongs I, II, and III of Title II of the ADA

and this kind of statement reveals decisively that Judge Keller has a fundamental

misunderstanding of federal ADA law.

41.  Plaintiffs had made similar requests to Judge Bentivegna at the beginning of the October 2011 trial on the neglect petitions. Judge Bentivegna denied them.  On appeal, the Supreme Court upheld Judge Bentivegna's decision denying such motions. Plaintiffs state that this denial was in error and in direct violation of Title II of federal ADA law.

42.  In its decision, the CT Supreme Court, citing *In re Anthony B.,* 54 Conn. App. 463, 735 A.2d 893 (1999), ruled that claimed ADA violations are not a defense to neglect or termination proceedings.  In response, plaintiffs contend that It is correct to state that defendants in termination proceedings cannot seek to excuse the neglect and abuse of their children by stating that they have a disability.  However, it would be incorrect to state that it is acceptable under Title II of federal ADA law to conduct the neglect or termination proceedings without providing reasonable modifications as required by Title II of federal ADA law, so that the plaintiffs could fully participate in such proceedings.

43.  The CT Supreme Court further stated that there is no authority for the proposition that the ADA requires trial courts to provide disabled parents with ADA coordinators during child protection proceedings to assist them in defending the case, because the ADA does not create special obligations in either termination or neglect proceedings.  See *In re Joseph* W., supra, 305 Conn. 650-653.  Again, if the trial court is unwilling to provide a special reasonable modification and thus declines to provide it, the trial court must then inform litigants what alternative reasonable modifications they are willing to provide so that litigants with disabilities can access the activities, services,

and programs of the Court and/or obtain protection from discrimination based upon the perception of disability.

44. The Defendants made claims that the Plaintiffs had mental illness right from the beginning of these neglect proceedings in 2005 and yet at no time did they offer the Plaintiffs protection from discrimination based upon mental health disability or reasonable modifications so that the Plaintiffs could access the Defendants' activities, services, and programs.

45. Furthermore, the Defendants used these claims in regard to a mental health disability as the basis for accusing the Plaintiffs wrongly of predictive neglect, depriving the Plaintiffs of the custody of their children, and of a loving relationship with their children, as well as insisting that the Plaintiffs who are long time partners and would have been married by now had this tragedy not occurred, cut off communication with one another.

46. The actions of the Defendants in denying the Plaintiffs access to their services, programs and activities and their discriminatory actions were intended to cause or recklessly or consciously disregarded the probability of causing the Plaintiffs severe and significant emotional and physical distress for an extended period of time.

47. The conduct of these Defendants was extreme and outrageous.

## CAUSE OF ACTION

## COUNT I:  THE CONNECTICUT JUDICIAL BRANCH IS IN VIOLATION OF TITLE II OF FEDERAL ADA LAW

48. Paragraphs 1 through 47 are incorporated by reference as if fully stated herein.

49. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. Sec. 12132; 28 C.F.R. Sec. 35.130(a).

50. The Connecticut Judicial Branch is a "public entity" within the meaning of the ADA as cited above.

51. The CT Judicial Branch has not been compliant with the requirements of federal ADA law during the duration of this case.

52. The CT Judicial Branch has not provided the name and contact information of their Designated Responsible Employee under the ADA.

53. The CT Judicial Branch discriminated against Joseph Watley and Karin Hasemann based upon the false perception of disability and failed to establish procedural and due process safeguards which would have prevented such discrimination from taking place.  This is a violation of Prong III of Title II of the ADA.

54. The CT Judicial Branch has no policies and/or procedures in place to prevent discrimination based upon the false perception that a person has a mental health disability. There is no method in place for guiding CT Judicial Branch employees in regard to what such a false perception would look like and how it can be prevented.

55. The Plaintiff, Karin Hasemann is a person with at least one eligible disability under the definition of the ADA—mild narcolepsy—and yet she was not provided with reasonable modifications and protection from discrimination for that disability by the CT Judicial Branch thus denying her access to the activities, services, and programs which the CT Judicial Branch provides.

56.  Joseph Watley is a person whom the Court itself <u>has defined as</u> an eligible person with a disability according to federal ADA law and yet he was not offered or provided with reasonable modifications and protection from discrimination either by the CT Judicial Branch or, thus denying him access to the activities, services, and programs which the Branch provides in violation of Title II of federal ADA law.

## COUNT II:  THE CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, AND ATTORNEY JOETTE KATZ AS COMMISSIONER OF DCF IS IN VIOLATION OF TITLE II OF FEDERAL ADA LAW

57.  Paragraphs 1 through 56 are incorporated by reference as if fully stated herein.

58.  Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. Sec. 12132; 28 C.F.R. Sec. 35.130(a).

59.  The Department of Children and Families is a "public entity" within the meaning of the ADA as cited above.

60.  DCF has not been compliant with the requirements of federal ADA law during the duration of this case.

61.  DCF has not provided the name and contact information of their Designated Responsible employee under the ADA.

62.  The Department of Children and Families falsely diagnosed both Joseph Watley and Karin Hasemann as having a mental illness they do not have, and

proceeded to discriminate against them based upon the false perception that they have a mental illness.  This is in violation of Prong III of Title II of the ADA.

63.  DCF has no policies and/or procedures in place to prevent discrimination based upon the false perception that a person has a mental health disability.  There is no method in place for guiding DCF employees in regard to what such a false perception would look like and how it can be prevented.

64.  The Plaintiff, Karin Hasemann, is a person with at least one eligible physical disability under the definition of the ADA—mild narcolepsy—and yet she was not provided with reasonable modifications and protection from discrimination for that disability by DCF thus denying her access to the activities, services, and programs that it provides.

65.  Joseph Watley is a person whom the Court has defined as an eligible person with a disability according to federal ADA law and yet once the trial court had made that finding of fact he was not offered or provided with reasonable modifications and protection from discrimination by DCF, thus denying him access to the activities, services, and programs which DCF provides in violation of Title II of Federal ADA law.

66.  The hostility that DCF has expressed towards Karin Hasemann and Joseph Watley based upon the false diagnosis of mental illness has been so great that they have alienated the plaintiffs and failed to engage the plaintiffs in their activities, services, and programs in a meaningful way, thus denying Plaintiffs access to those activities, services, and programs in violation of Title II of Federal ADA law.

67.  DCF workers discriminatory attitudes towards Karin Hasemann and Joseph Watley based upon their mistaken belief that Plaintiffs have a mental health disability

when they do not colored all aspects of the work that the Department did with the Plaintiffs rendering that work fundamentally flawed and inaccurate such that it should be set aside and completely disregarded.

68.  It is worth noting that DCF appears to have a misperception of the nature of mental health disabilities viewing them on a deficit basis rather than a recovery basis. As a result, it appears that the Department has historically failed to engage its clients with mental health disabilities in the kinds of meaningful programs which would evolve from a recovery based model.

## COUNT III:  JUDGE CHRISTINE E. KELLER IS IN VIOLATION OF TITLE II OF FEDERAL ADA LAW BOTH AS AN INDIVIDUAL AND IN HER OFFICIAL CAPACITY

69.  Paragraphs 1 through 68 are incorporated by reference as if fully stated herein.

70.  The Honorable Christine E. Keller at the time of her involvement in this case was a Judge of the Superior Court and as an official of the Court was required to follow through on the non-discrimination mandate of Title II of the ADA given that the CT Judicial Branch is a public entity according to 42 U.S.C. Sec. 12132; 28 C.F.R. Sec. 35.130(a).

71.  The Honorable Christine E. Keller while in her administrative capacity denied both Joseph Watley and Karin Hasemann their right to protection against discrimination under federal ADA law and refused to provide them with the reasonable modifications which they required in order to obtain access to judicial services.

72.  The Honorable Judge Christine E. Keller in her administrative and judicial capacity denied that the CT Judicial Branch is required to provide the reasonable

modifications which plaintiffs requested, i.e. the presence of an ADA coordinator during the legal proceedings. However, she did not offer alternative reasonable modifications which the Branch could have provided, thus denying the plaintiffs access to the judicial services to which they are entitled under Title II of federal ADA law.

73.  In her Memorandum of Decision dated March 11, 2013, the Honorable Judge Christine E. Keller stated that the Plaintiffs did not show evidence that they had a disability according to ADA Definitions. This Statement was not been made in good faith since the basis of the Court's argument that the Plaintiff's should be denied their parental rights is that they do have a disability according to ADA Definitions.

74.  In her Memorandum of Decision dated March 11, 2013, the Honorable Judge Christine E. Keller wrongly indicated that having a qualified mental health disability under the ADA would automatically require that the Plaintiffs be determined to lack competency and to require the appointment of a Guardian Ad Litem on their behalf.

75.  Nothing could be further from the case and this assumption articulated by the Court in and of itself shows evidence of the discrimination which the plaintiffs have stated led them to lose their parental rights in regard to their children in the first place, and which prevented them from obtaining access to the activities, programs, and services provided by the CT Judicial Branch and also DCF throughout the pendency of this case.

76.  The Honorable Judge Christine E. Keller stated that the ADA violations do not provide a defense during termination of parental rights proceedings because "the ADA does not create special obligations" in such a proceeding. The Plaintiffs state that such a conclusion is a direct misinterpretation and violation of federal ADA Law. While

Defendants in a termination proceeding cannot excuse criminal behavior by stating they have a disability, they had every right to protest if they do not have access to the proceedings making the determination in regard to those criminal allegations because the CT Judicial Branch failed to provide them with the reasonable modifications to which they are entitled under Title II of federal ADA law.

## COUNT IV:  THE CONNECTICUT JUDICIAL BRANCH COMMITTED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON PLAINTIFFS

77.  Paragraphs 1 through 76 are incorporated by reference as if fully stated herein.

78.  The actions of the Connecticut Judicial Branch were intentional, deliberate, and outrageous.  As a legal entity, it is perfectly well aware of what federal ADA law requires.

79.  As consequence of these intentional violations of the Plaintiff's ADA rights, the Plaintiffs have been denied the comfort and consolation of a marital relationship with one another and with the opportunity to have a happy and healthy family life along with their children and, as a result, have experienced serious emotional distress.

## COUNT V:  THE CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, AND ITS COMMISSIONER ATTORNEY JOETTE KATZ, COMMITTED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON PLAINTIFFS

80.  Paragraphs 1 through 79 are incorporated by reference as if fully stated herein.

81.  The actions of the Connecticut Department of Children and Families were intentional, deliberate, and outrageous.  Indeed, the Department has a particular

16

obligation to be sensitive to the needs of individuals with disabilities and to avoid labeling people mentally ill simply because they come from different social and economic backgrounds that DCF providers are used to.

82. As consequence of these intentional violations of the plaintiff's ADA rights, the plaintiffs have been denied the comfort and consolation of a marital relationship with one another and with the opportunity to have a happy and health family life along with their children and, as a result, have experienced serious emotional distress.

## COUNT VI: JUDGE CHRISTINE E. KELLER COMMITTED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON PLAINTIFFS

83. Paragraphs 1 through 82 are incorporated by reference as if fully stated herein.

84. The actions of the Honorable Judge Christine E. Heller were intentional, deliberate, and outrageous. A person with her extensive legal experience knows perfectly well what the requirements of federal ADA law are.

85. As consequence of these intentional violations of the plaintiff's ADA rights, the plaintiffs have been denied the comfort and consolation of a marital relationship with one another and with the opportunity to have a happy and healthy family life along with their children and, as a result, have experienced serious emotional distress.

## OTHER LAWSUITS

L15-CP05-008039-A

L15-CP06-008191-A

IN RE: JOSEPH W.
IN RE: JOSEPH W., JR., et al.

17

Nos. 35555, 35574.
Argued Sept. 10, 2013. -- October 09, 2013

IN RE JOSEPH W., JR., ET AL.*
(AC 30476)
(AC 30477)
Bishop, Harper and Pellegrino, Js.
Argued January 12—officially released June 8, 2010

IN RE JOSEPH W., JR., ET AL.*
(SC 18951)
(SC 18952)
Rogers, C. J., and Norcott, Palmer, Zarella, Eveleigh, Harper and
Vertefeuille, Js.
Argued May 14—officially released June 28, 2012


## REQUEST FOR RELIEF


WHEREFORE, the Plaintiffs pray that this Court assume jurisdiction over this

case and enter an order that grants the following injunctive relief:

1.  A finding that the CT Judicial Branch is in violation of Title II of Federal ADA

    law, Section 504 of  the Rehabilitation Act of 1973;

2.  A finding that the Department of Children and Families and its Commissioner

    Joette Katz is in violation of Title II of Federal ADA law, Section 504 of the

    Rehabilitation Act of 1973;

3.  A finding that the Honorable Judge Christine E. Heller is in violation of Title II

    of Federal ADA law;

The Plaintiffs further request that in accordance with Title II of Federal ADA Law, the Rehabilitation Act of 1973, and the Due Process Clause of the 14th Amendment of the U.S. Constitution, that this Court enter the following orders:

4.   An order that the CT Judicial Branch provide the name and contact information of their Designated Responsible Employee;

5.  An order that the Department of Children and Families provide the name and contact information of their Designated Responsible Employee;

6.  An order that the CT Judicial Branch provide a meaningful grievance procedure;

7.  An order that Attorney Joette Katz, Commissioner of the Department of Children and Families administer the Department of Children and Families in such as manner as to adhere to the requirements of Title II of federal ADA Law, the Rehabilitation Act of 1973, and the Due Process Clause of the 14th Amendment of the U.S. Constitution;

8.  An order that the Department of Children and Families provide a meaningful grievance procedure;

9.  An order that the CT Judicial Branch comply with the requirement that they provide reasonable modifications to litigants who are eligible under ADA law;

10. An order that the Department of Children and Families provide reasonable modifications to litigants who are eligible under ADA law;

11. An order that the Honorable Judge Christine E. Heller comply with the requirement that litigants with disabilities receive the reasonable modifications they need in order to access judicial services;

12. An order that the CT Judicial Branch comply with the requirement that they protect litigants with mental health disabilities from discrimination based upon their disability as well as the training, policies and procedures necessary for them to do so;

13. An order that DCF comply with the requirement that they protect litigants with mental health disabilities from discrimination based upon their disability as well as the training, policies, and procedures necessary for them to do so;

14. An order that the Honorable Judge Christine E. Heller comply with the requirement that she cannot discriminate against litigants with mental health disabilities;

15. An order that the CT Judicial Branch, particularly the Judges employed by the Branch, cease discriminating against the Plaintiffs based upon the false perception that they have a mental health disability they do not have;

16. An order that the Department of Children and Families cease discriminating against the Plaintiffs based upon the false perception that they have a mental health disability that they do not have.

The Plaintiffs further request that this Court order damages for the intentional infliction of emotional distress: $1,000,000 from the CT Judicial Branch, $1,000,000 from the Department of Children and Families, and $500,000 from Judge Christine E. Heller in her individual capacity.

By _____

Joseph Watley
172 South Main Street
Thomaston, CT  06787
860-283-4686 (Home)
joey_watley@yahoo.com


By _____

Karin Hasemann
1101 Bunker Hill Road
Watertown, CT  06708
860-274-4617
Karininct29@gmail.com

December 9̶ 13 2013

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declare under penalty of perjury that they are the plaintiffs in the above action, that they have read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. Sec. 1746; 18 U.S.C. Sec. 1621.

Executed at __Hartford__ on 13 December 2013

_____
Plaintiff #1's Original Signature

_____
Plaintiff #2's Original Signature